Ginny ALBRITTON, Wife of/and Donald Albritton, Individually and on Behalf of Their Minor Children, Brandi Albritton, Chad Albritton and Tracie Albritton Putnam, Plaintiffs,

v.

COLEMAN COMPANY and Coleman Company Manufactured Housing Products Division of Wichita, Kansas, Defendants.

Civ. A. No. S90–0527 (R).

United States District Court,
S.D. Mississippi, S.D.

Dec. 3, 1992.

Darryl J. Tschirn, Metairie, LA, for plaintiffs.

Peter C. Abide, Compton, Crowell & Hewitt, Biloxi, MS, Michael T. Pulaski, Keith W. McDaniel, Pulaski, Gieger & Laborde, New Orleans, LA, for defendants.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on the Motion of the defendants, The Coleman Company, Inc. and Coleman Manufactured Housing Products Division of Wichita, Kansas (hereinafter "Coleman"), for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This Court asserts diversity jurisdiction pursuant to 28 U.S.C. Section 1332. The plaintiffs, Ginny Albritton, wife of and Donald Albritton, individually, and on behalf of their minor children, Brandi Albritton and Chad Albritton, and Tracie Albritton Putnam, are residents of the State of Mississippi where the defendants are Kansas corporations. The amount in controversy is $3,000,000.00, plus expenses, which exceeds the requisite amount of $50,000.00. This Court follows the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), therefore, Mississippi substantive law governs.

## FINDINGS OF FACT

In April of 1980, Donald and Ginny Albritton purchased a used 1976 Briargate trailer from Randy and Susan Beran, all of the above being from Picayune, Mississippi. The Briargate trailer was manufactured by Republic–Hensley, Inc. and was originally sold by Discount Mobile Home City of Slidell, Louisiana. The aforementioned trailer

allegedly contained a Model 8600 SolarPak Mobile Home furnace (hereinafter "8600 SolarPak") manufactured by Coleman.

Mrs. Albritton first noticed an odor allegedly released from the furnace in the winter of 1981. In Mrs. Albritton's deposition, she stated "all I can remember is every time it was turned on, I could smell something. It took my breath." (Deposition of Ginny Albritton, hereinafter "G.A." Depo, at 18). The alleged symptoms described by Mrs. Albritton were nausea, chest pains, stomach cramps, itching, insomnia, nightmares, difficulty in breathing, hallucinations, and an inability to swallow water. The plaintiffs have listed numerous ailments in addition to the ones mentioned previously that, according to their attorney, are related to what is termed "the heater incident."

According to Donald Albritton, he changed the subject furnace in March of 1982 because

> [m]y wife kept saying that she smelled fumes when it would run. And every time it would kick on, she would complain about smelling these fumes.

(Deposition of Donald Albritton, hereinafter "D.A." at 25–26). At one point when the weather became very cold, Mrs. Albritton moved out of the trailer stating "I'm not breathing any more of these fumes. I'm not coming back until you replace that furnace." (D.A.Depo. at 26). The same night Mrs. Albritton left the trailer, Mr. Albritton also thought he smelled fumes and requested that his uncle come to the trailer. Mr. Albritton stated "as soon as we opened the door, at that time, the fumes were very strong." (D.A.Depo. at 26). The fumes were described as smelling like "carbon monoxide" or "car exhaust fumes" by Mr. Albritton. (D.A.Depo. at 27).

When Mr. Albritton replaced the original furnace in March of 1982, he described the replacement furnace as "virtually the same height and basically the same style as I talked about on the other one." (D.A.Depo. at 33). Mr. Albritton installed the furnace himself and had his cousin connect the wiring. Defendants contend the newer model furnace would have re-

quired a substantial change in the installation process had the original furnace been, in fact, a 8600 SolarPak.

Since the replacement furnace was installed, Mr. Albritton has not had any problems with the furnace nor has Mrs. Albritton had any additional complaints. Mr. Albritton discarded the original furnace at the Picayune landfill. Therefore, there is no furnace to be admitted into evidence.

## DISCUSSION

Summary judgment is appropriate only if the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no *genuine* issue of *material* fact.' *Anderson v. Liberty Lobby*, 477 U.S. [242], [248] [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original)." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

> [A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. Greenwood*, 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

## I. Statute of Limitations

■ Defendants argue the suit filed by the plaintiffs is untimely for the statute of limitations has expired. Miss.Code Ann. Section 15–1–49 (1972) provides:

all actions which no other period of limitations is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

A products liability claim accrues within six years from the time in which the wrong is discovered or causes harm. *Alabama G.S.R. Co. v. Allied Chemical Corp.*, 501 F.2d 94 (5th Cir.1974).

In *Ford Motor Co. v. Broadway*, 374 So.2d 207 (Miss.1979), the court held the statute would begin to run from the time the injuries were sustained, and stated:

The statute of limitations in strict products liability cases should strike a balance between the necessity of providing the consumer with adequate time within which to discover a defect and institute an action, and the need to provide the manufacturer with a definite period of

liability and a date on which his exposure to suit ends.

*Ford Motor Co.*, 374 So.2d at 209.

■ In the case before this Court, the complaint was filed October 26, 1990. Therefore, the Albrittons' cause of action must have accrued no later than October 27, 1984, for this action to have been timely filed. Clearly, the depositions of Donald and Ginny Albritton state the trailer was purchased in April of 1980, and in November of 1981, Mrs. Albritton first noticed the alleged heater problem which would take her breath away. Soon after, Mrs. Albritton complained of numerous injuries which she alleged culminated from the furnace. The furnace in question was discarded in March of 1982. Thus, the alleged "heater incident" lasted approximately four months, from November, 1981 to March, 1982 two years before October 1984.

Plaintiffs assert the link between the alleged medical injuries sustained and knowledge of the furnace defect was latent. This Court, upon examination of the medical records and depositions provided, finds that not only were some of the medical injuries complained of prior to the "heater incident", but also that there is no evidence in the record collating alleged symptoms to the "heater incident." Therefore, this Court finds the October 26, 1990 complaint was untimely filed for the statute of limitations had run.

## II. Products Liability

This Court, for the following discussion, will assume the statute of limitations has not expired.

■ Products liability refers to the liability of a supplier of a defective product to someone who is injured by the product. There are three types of defective products. The first is manufacturing defects. This is when a product emerges from manufacturing in a different form or in a more dangerous form than if the product was properly made. The next is a design defect. This involves a properly manufactured product which has a dangerous propensity. In Mississippi, the test for defective design is to employ the "Consumer Expectation" test rather than the risked

utility test in determining whether or not a product is unreasonably dangerous. *Melton v. Deere & Co.*, 887 F.2d 1241 (5th Cir.1989). Also, the defect must have existed when the product left the defendant's control. If the product has traveled through the normal channels of distribution, then this control may be inferred.

W. Prosser and K.P. Keeton outlined the burden of proof required in a products liability suit as follows:

> [T]he plaintiff, in order to recover against a target defendant, has the burden of introducing some evidence which, if believed, would justify a reasonable person in concluding that it was more likely than not that: (1) claimant's injuries or illness was attributable to a dangerous condition of a product identified as being one that was supplied by the target defendant, [here Coleman] either as a manufacturer or some other seller or supplier in the marketing chain; (2) the product was defectively dangerous at the time of the damaging event out of which the claimant's injury or illness arose; (3) the defective condition was a cause of the damaging event; (4) the defective condition was in existence at the time of possession was surrendered by the defendant; and (5) the defective condition was the proximate or legal cause of the damaging event.

*Restatement of Torts* section 103 (5th ed. 1984).

■ The essential element of the plaintiffs' case is the identification of the named defendant as the manufacturer or supplier of the defective product in question. *Drayton v. Jiffee Chemical Corp.*, 395 F.Supp. 1081 (N.D.Ohio 1975), motion denied, 413 F.Supp. 834 (N.D.Ohio 1976). In the case at hand, the plaintiffs have failed to prove or to establish that Coleman did in fact manufacture the furnace in question.

Assuming identity of the manufacturer was established and the plaintiffs have established that a defect in the product exists, the plaintiffs must then find a theory that will work against the defendants. There are five theories available: intent; negligence; strict liability; implied warran-

ties of merchantability and fitness for a particular purpose; and expressed warranty. In the case at hand, the plaintiffs allege: the defendants were negligent in the manufacture and/or design and/or distribution and/or marketing of the 8600 SolarPak furnace; the defendants failed to warn or adequately warn the plaintiffs of the dangers inherent in the usage of the furnace; and that the defendants are liable to the plaintiffs for negligence as well as strict liability. In addition, the plaintiffs contend the defendants

> both expressly and impliedly held out to the general public that the Model 8600 furnace was reasonably fit for the purpose intended, whereas in truth and in fact, the product was unfit for said purposes and dangerous to the health of persons using such and likely to cause severe injuries to the users of such.

Thus, breaching both the implied warranties and an express warranty.

■ First, the prima facie case for liability based on negligence is the same as in any negligence case. The plaintiffs must show there was a duty, the duty was breached, and the breach of the duty was the actual and proximate cause of the actual damages suffered by the plaintiffs. The breach of duty is evidenced by showing the negligent conduct of the defendants which led to the supplying of a defective product. The plaintiffs have not established a breach by the defendants of their duty, and there is no proof offered establishing a relationship between the symptoms complained of and the "heater incident;" thus, the actual and proximate cause prong fails. Furthermore, actual damages have not been proven.

■ The prima facie case for liability based on strict tort liability is shown by the existence of a strict duty owed by a commercial supplier of a product to the plaintiff and that the breach by the defendant of that duty caused actual and proximate damage. The duty of the defendant is to supply a safe product. In order to establish a breach of that duty, the plaintiff must show the product is defective and the defect must then render the product unrea-

sonably dangerous. Without the heater in evidence, nor evidence that no substantial change to the condition of the heater was ever made, this Court finds it difficult to characterize any such defect.

The next step to be established by the plaintiffs, in strict tort liability, is that the defect existed when the product left the defendants' control. The plaintiffs in this case have not established by the record that the furnace in question was ever in the defendants' control.

This Court reiterates that the plaintiffs have failed to establish proximate cause. The final prong is there must be actual damage. The physical injury alleged by the plaintiff must be shown or recovery will be denied. The plaintiffs in this case have failed to show any injuries directly caused by the "heater incident."

■ There are two types of warranties implied in every sale of goods. The first is the implied warranty of merchantability. This refers to whether the goods are of average acceptable quality and are generally fit for the purpose for which the goods are intended. The second type is an implied warranty for the fitness for a particular purpose. This arises when the seller knows or has a reason to know the particular purpose for which the buyer is buying the product and the buyer in turn relies on the seller's skill and judgment in selecting the individual product. If the product fails to live up to either of the above standards, the implied warranty is then breached and the defendant can be held liable. In this case, the plaintiffs do not have to prove any fault on the part of the defendants. The plaintiff does have to show that there was actual and proximate cause, as well as personal injury and property damage, and a purely economical loss is recoverable. The plaintiffs in this case did not purchase the subject furnace from the defendants, therefore, the warranty for fitness for a particular purpose is not applicable. The plaintiffs never relied on the skill of a representative of the defendants or the knowledge of such a representative in picking the particular furnace. In fact, the plaintiffs purchased the subject furnace already installed in the trailer.

■ An express warranty is any affirmation of fact or promise which concerns the product and becomes part of the basis for the purchase of such a product. Fault does not need to be shown to establish a breach. The plaintiff need only show that the product did not live up to its warranty. There were no statements of material fact concerning the quality or the use of the subject furnace by the defendants to the plaintiffs in this case. The defendants were not the sellers and they did not intend to induce reliance by the plaintiffs in purchasing the particular furnace. If any express warranty was rendered, the more likely parties to such a warranty would be the Berans, who sold the trailer to the plaintiffs, and the plaintiffs.

The defenses available to the defendants in products liability suits are as follows: the plaintiffs may assert assumption of the risk and contributory negligence in refuting the negligence action; in the case of strict liability, the defendants are afforded the defenses of assumption of the risk, unreasonable misuse; and finally, when the plaintiff asserts a breach of implied or expressed warranty, the defendant may raise the defense of assumption of the risk, unreasonable misuse and failure to give reasonable notice of the breach.

■ This Court will now address the issue of failure to warn or in the alternative, failure to adequately warn. In March of 1989, Mr. Albritton noted a safety flash bulletin at his place of employment which read as follows:

Coleman 8600 Solarpak Mobile Home Furnaces: An inspection and discount replacement program for 100,000 Model SolarPak Mobile Home Furnaces is being undertaken by Coleman Company Manufactured Housing Products Division of Wichita, Kansas in voluntary cooperation with the CSPC. Reports have been received of deaths and serious injuries caused by leaking carbon monoxide from affected furnaces. The furnaces were manufactured between 1964–1971 so it is unlikely that many are still in service. If

you happen to own an older model Coleman furnace, look on the furnace door and/or rating plate. If it is a Coleman Model 8600 or if you are uncertain, call Coleman toll free at 1–800–232–SOLR. This safety flash initiated the present litigation.

"It is clear that after such a product has been sold and dangerous defects in design have come to the manufacturer's attention, the manufacturer has a duty either to remedy these or, if complete remedy is not feasible, at least give users adequate warnings and instructions concerning methods for minimizing the dangers." *Braniff Airways, Inc. v. Curtiss-Wright Corp.,* 411 F.2d 451, 453 (2d Cir.1969). Clearly, the defendants reacted in an adequate remedial fashion as soon as they were alerted to a possible defect in their product in the latter part of 1988.

If the defect is not discovered until a later time, the duty will arise upon discovery. *Bottazzi v. Petroleum Helicopters, Inc.,* 664 F.2d 49 (5th Cir.1981). Older products which do not exemplify the present state of technology, such as the 1971 8600 SolarPak, must be distinguished from newer models. *See, Estate of Kimmel v. Clark Equipment Co.,* 773 F.Supp. 828 (W.D.Va.1991); *Kolesar v. Navistar Corp.,* M.D.Pa., No. 90–2155 (Dec. 5, 1991). The alleged defect in the Coleman 8600 SolarPak was adequately publicized upon discovery. The information published is nonconclusive as to a design defect and the cause of such defect is unknown.

In response, plaintiffs argue:

that if Mr. Zimmerman who was in charge of the inspection program, and one of the higher-ups in Coleman Company, if in fact he had no knowledge (until the third quarter of 1988) of any defect or any problems with carbon monoxide from the 8600 SolarPak heating furnace, manufactured and distributed by Coleman Company, certainly there is no way that the Albrittons had any way of knowing of any such defect or injuries or deaths the leaking carbon monoxide could cause, until they first saw the bulletin in 1989.

This Court disagrees with the plaintiffs' reasoning. The key distinction between the plaintiffs' knowledge and the defendants' is that the plaintiffs were on notice that something was not right with their particular furnace. In fact, the plaintiffs acted on their notice by replacing the furnace. If people, such as the plaintiffs in this case, had contacted the defendants and alerted them to a possible defect as soon as there was a problem, the defendants would have been required to act sooner. It is unjust to require a manufacturer to act on that which they are unaware.

It is highly probable that in the ten years after manufacturing of the furnace ceased, substantial changes could have been made which would render the furnace defective. The furnaces may have been improperly installed, incorrectly maintained and/or damaged in transit. In the case at hand, the plaintiffs never complained about the furnace not working to either the defendants, the couple from whom they bought the trailer, the original retailer of the trailer, nor the manufacturer of the trailer. The defendants should have been alerted at the time the furnace was allegedly malfunctioning. The plaintiffs should have attempted to contact someone in the chain of distribution regarding the alleged fume leakage. The plaintiffs showed little concern regarding the allegedly severe condition of their home's furnace in 1981. There was no reasonable notice given to anyone regarding a breach.

### Conclusion

This Court finds the statute of limitations for bringing this suit has expired; the plaintiffs have failed to establish the defendants were indeed the manufacturer of the subject furnace; there is no proof of a defect in the furnace; there is no proof of a causal connection between the "heater incident" and the alleged injuries; and finally, the defendants adequately warned consumers of possible defects in the 8600 SolarPak.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendants' Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that a Judgment shall be entered in accordance with the foregoing Memorandum Order pursuant to Rule 58 of the Federal Rules of Civil Procedure and Rule 9 of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi.

SO ORDERED AND ADJUDGED.