# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-01201-SCT

*HOYT FORBES AND HILDA FORBES*

*v.*

*GENERAL MOTORS CORPORATION AND MACK GRUBBS MOTORS, INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2003 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WAYNE DOWDY |
| ATTORNEYS FOR APPELLEES: | GENE D. BERRY |
| | PAUL V. CASSISA, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED TO THE CIRCUIT COURT OF MARION COUNTY - 05/25/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This products liability case between an automobile owner and the manufacturer of that vehicle is before us on writ of certiorari.  After a car accident, Hilda Forbes, the driver of the

car sustaining front-end damage, sued the auto manufacturer because the air bag failed to deploy. After the plaintiffs rested their case-in-chief, the trial court granted a motion for a directed verdict for the defendant General Motors ("GM"), ruling that Forbes and her husband had failed to present sufficient evidence to support a verdict in their favor. The Court of Appeals affirmed. We now affirm in part and reverse and remand in part, the decision of the Court of Appeals.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT
## AND THE COURT OF APPEALS

¶2.     The Court of Appeals provided the following factual and procedural background:

On December 15, 1997, Hilda Forbes and her three grandchildren were traveling to Columbia, Mississippi, in her 1992 Oldsmobile Delta 88. Mrs. Forbes was driving behind a 1981 Chevrolet Chevette, which suddenly stopped and attempted to turn into a private driveway. Mrs. Forbes struck the Chevette from the rear. Both automobiles were damaged. The air bag in Mrs. Forbes' automobile did not inflate.

As a result of the impact, Mrs. Forbes was propelled forward into the windshield. She suffered a subdural hematoma. Dr. Howard Katz, a specialist in physical medicine, rehabilitation, and spinal cord injuries, testified by deposition that Mrs. Forbes suffered significant cognitive dysfunction and never completely recovered from the injury to her brain.

The air bag system and Mrs. Forbes' automobile were manufactured by GM. The automobile was purchased from Mike Smith Motors, which subsequently was purchased by Mack Grubbs Motors, Inc. Angela Coleman was the driver of the 1981 Chevrolet Chevette.

On December 7, 2000, Hilda and Hoyt Forbes commenced this lawsuit in the Circuit Court of Hinds County, Mississippi. On December 15, 2000, they filed an amended complaint that added GM as a defendant. By agreement of the parties, venue was transferred to the Circuit Court of Marion County,

2

Mississippi, where this case was tried before the Honorable R.I. Prichard, III, and a jury.

The plaintiffs rested their case on the third day of trial. The plaintiffs voluntarily dismissed Angela Coleman. Mack Grubbs Motors, Inc.'s motion for a directed verdict was granted, after the plaintiffs confessed the motion. GM moved for a directed verdict, and the plaintiffs confessed the following portions of the motion:

> 1. Plaintiffs failed to prove that the air bag deviated in a material way from GM's specifications;
> 2. Plaintiffs failed to prove that the air bag was defective in design; and
> 3. Plaintiffs failed to prove that the air bag was defective because it failed to contain adequate warnings.

Judge Prichard then granted the remainder of GM's motion for a directed verdict, finding that the plaintiffs failed to prove that their damages were proximately caused by an unreasonably dangerous and defective condition of the air bag system due to GM's breach of an express warranty or other express factual representation upon which the plaintiffs justifiably relied in using the product.

*Forbes v. Gen. Motors Corp.*, __So.2d__ , 2005 WL 2434404, *1 (Miss. Ct. App. 2005). The Forbeses argued that GM breached an express warranty, that the air bag was unreasonably dangerous, and that the unreasonably dangerous condition proximately caused the damages for which recovery was sought, namely the injuries to Mrs. Forbes. The trial judge ruled that there was insufficient evidence for the jury to reach a verdict other than for GM and that if the case had been submitted to the jury and it had found against GM, he would have been compelled to set aside the verdict and either grant a new trial or a J.N.O.V. Additionally, the trial judge excluded evidence the Forbeses presented of other GM automobiles with air bags that *did* inflate when those cars were involved in wrecks. After the Court of Appeals affirmed

3

the trial court, the Forbeses filed a motion for rehearing. The Court of Appeals denied that motion, but issued a modified opinion affirming the trial court's decision by a split vote of 5-4, with a separate dissenting opinion. *Forbes v. Gen. Motors Corp.*, --- So.2d ----, 2005 WL 2434404 (Miss. Ct. App. 2005). The Forbeses then petitioned this Court for a writ of certiorari which we granted. As to the issue of the exclusion of certain photographs, we affirm. As to the issue of the trial court's grant of a directed verdict in favor of GM, we reverse the judgment of the Court of Appeals and remand this case to the trial court for proceedings consistent with this opinion.

### DISCUSSION

**I.    WHETHER THE TRIAL COURT ERRED IN GRANTING GM'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE PLAINTIFFS' CASE-IN-CHIEF**

¶3.    Our standard of review for a directed verdict is clear. This Court will consider the evidence in the light most favorable to the non-movant, giving that party (Forbes) the benefit of all favorable inferences that may be reasonably drawn from the evidence. We must decide if the facts so considered point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict. Thus, if reasonable jurors could not have arrived at a different verdict, the grant of a directed verdict must be affirmed on appeal. On the other hand if there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we cannot affirm the grant of a directed verdict. *Cousar v. State*, 855

4

So.2d 993, 998 (Miss. 2003). In **Cousar**, we addressed the denial of a directed verdict. However, we have also stated that the same standard of review applies equally to the review of a grant of a directed verdict. "An appellate court reviews a trial court's grant or denial of a motion for directed verdict under the same standard of review that is employed when reviewing the denial of a judgment notwithstanding the verdict." **Blake v. Clein**, 903 So.2d 710, 731 (Miss. 2005) (relying on **Shelton v. State**, 853 So.2d 1171, 1186 (Miss. 2003)). That standard is de novo. "This Court conducts a de novo review of motions for directed verdict . . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." **Entergy Mississippi, Inc. v. Bolden**, 854 So.2d 1051, 1055 (Miss. 2003) (internal citations omitted). "Additionally, this Court has held that a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." **Id.**

¶4. Therefore, we will consider the evidence de novo in the light most favorable to the Forbeses and give them the benefit of all favorable inferences that may be reasonably drawn from the evidence. In doing so in this case, if we find the facts so considered point so overwhelmingly in favor of GM that reasonable jurors could not have arrived at a contrary verdict, and there is thus no question for the jury, we are required to affirm the trial court's ruling. Conversely, if we find that there is substantial evidence of such quality and weight

5

that reasonable, fair-minded and impartial jurors could have differed on the matter, and that the trial court should have submitted the issue to the jury, then we must reverse and remand.

¶5.   The Forbeses argued that: (1) the product breached an express warranty or failed to conform to other express factual representations upon which they relied: (2) the defective condition rendered the air bag and car unreasonably dangerous to them; and, (3) the dangerous condition proximately caused the injuries to Mrs. Forbes. Miss. Code Ann. § 11-1-63(a) (Rev. 2002) states:

> (a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:
>
> > (i)     1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or
> > 2. The product was defective because it failed to contain adequate warnings or instructions, or
> > 3. The product was designed in a defective manner, or
> > 4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and
> > (ii)  The defective condition rendered the product unreasonably dangerous to the user or consumer; and
> > (iii)  The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

*Id.* The plaintiff must prove (ii), (iii), and at least one of four elements of a claim under (i). Forbes's counsel, for better or worse, confessed having no cause of action based on a defective product under subsections (a)(i)(1), (a)(i)(2), or (a)(i)(3). The remaining possibility

for Forbes's cause of action is found under subsection (a)(i)(4), the breach of an express warranty, which is the portion of the statute in which Forbes's claim is grounded. The Forbeses argued that (1) because the owner's manual of their Delta 88 represented that the air bag would inflate when the car was involved in a frontal collision that was "hard enough," GM breached an express warranty; (2) because the air bag did not deploy and was defective, it was unreasonably dangerous; and, (3) because the air bag did not deploy, it proximately caused injuries to Mrs. Forbes, whose injuries otherwise would not have been as great. We consider these assertions today in order of their counterparts in the statute, subsections (i)(4), (ii), and (iii).

### A. Did GM breach an express warranty or fail to conform to express factual representations upon which the Forbeses justifiably relied?

¶6. The essence of the Forbeses' argument is that GM sold its product with the express warranty that the air bag would deploy in the event of a front-end collision when the impact was "hard enough." The Forbeses claim that the amount of force sustained by their car in this accident was certainly hard enough according to their experts' testimony, and that therefore the express warranty was breached. The express warranty referred to is a portion of the owner's manual for their automobile which states that if a front-end collision "is hard enough, the 'air bag' inflates in a fraction of a second."

¶7. The Court of Appeals centered their discussion around three sentences in the owner's manual upon which the Forbeses supposedly solely relied in purchasing their car, which reads

as follows. "The 'air bag' part of the SIR [Supplemental Inflatable Restraint] system is in the middle of the steering wheel. The SIR system is only for crashes where the front area of your vehicle hits something. If the collision is hard enough, the 'air bag' inflates in a fraction of a second." The Court of Appeals analysis focused a great deal on how hard "hard enough" actually is and discussed the evidence presented at trial. The Court of Appeals further noted that the Forbeses cited no authority for any assertion in their original briefs outside of the standard of review and the definition of a directed verdict. Normally, the failure to cite any authority in support of an assignment of error prevents us from considering a claim on appeal. *R.C. Petroleum, Inc. v. Hernandez*, 555 So.2d 1017, 1023 (Miss. 1990). However, as discussed below, because this case is largely fact-driven, we continue a detailed analysis.

¶8.     The Court of Appeals also focused on another fact supposedly creating an express warranty which was breached – the salesman's words. As the Court of Appeals stated, because the salesman who sold Mr. Forbes the Delta 88 stressed the importance of an air bag and explained that the car was equipped with one, the Forbeses claim to have been given a factual representation on which they relied. As both the trial court and the Court of Appeals correctly pointed out, the salesman was a representative of Mike Smith Motors or Mack Grubbs Motors, not GM. However, GM is the only remaining party to this case, and no representative from GM actually made any statement to the Forbeses regarding the air bag in their car, outside of the owner's manual. In any case, the Forbeses never once claimed in their

8

brief or in their petition that the oral statement made by the salesman was the express warranty upon which they relied. They instead focus wholly on the owner's manual, as we will as well.

¶9.     The Court of Appeals also pointed out that the Forbeses do not deny that they never read the alleged warranty in the owner's manual and that they thus fail to show sufficient reliance on the owner's manual. The Court of Appeals relied on *Palmer v. Volkswagen of America, Inc.*, 904 So.2d 1077, 1084 (Miss. 2005), where we stated, "[t]he presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." In *Palmer* we noted that, with regard to proximate cause, a plaintiff who has not read an owner's manual at all cannot claim to have been misled by it. *Id.* However, *Palmer* is not applicable to the issue before us. In *Palmer*, we were confronted with the issue of a failure to warn being the proximate cause; however, the issue today is a "failure to perform in accordance with a factual representation," in the words of the Court of Appeals, or rather a failure to conform to a factual representation upon which the claimant justifiably relied. In any case, that the Forbeses never read their owner's manual is not fatal to their case. It is still possible to rely on assertions therein without having actually read them. It would be quite unusual for a consumer to read an owner's manual before buying a car. Even more unusual would be for a consumer to insist upon reading the manual before buying the automobile and requiring that an understanding of the manual be a condition precedent to purchasing the car. The fact remains that Mr. Forbes did make his purchase conditional on one factor, the presence of a functional driver's side air bag. Forbes inquired about the

presence of an air bag from the salesman and ensured that the vehicle he was purchasing was equipped with one as a specific feature. More importantly, he paid a higher price to have an air bag included. While the salesman himself may not substantively assert facts making GM liable, here he was doing nothing more that conveying the express warranty to Forbes. The salesman was merely relaying a fact GM represented in their owner's manual, that the car he was buying had a working air bag. Relying on that fact, Mr. Forbes decided to purchase this particular car. To meet the first part of the statutory claim, the Forbeses must show that the product either "breached an express warranty *or* failed to conform to other express factual representations" upon which he justifiably relied in electing to use the product. Miss. Code Ann. § 11-1-63(a)(i)(4) (emphasis added). In this case, there is both an express warranty, the promise of a functional driver's side air bag, and justifiable reliance, the fact that, but for the promise of the air bag, Forbes would not have purchased the vehicle. The statutory requirements are thus met.

¶10.    The worthy dissenting opinion in today's case quotes a portion of ***Foster v. Copiah County Co-op., AAL.***, 246 Miss. 218, 231, 148 So. 2d 702, 707 (1963), where this Court held, "[i]f a statement was unknown to the buyer at the time the sale was completed, it is obvious that there can be . . . [no] detrimental reliance . . . ." However, ***Foster*** was clearly handed down well before Miss. Code Ann. § 11-1-63 was in effect and thus that opinion was not interpreting today's statute. The full sentence containing the holding from that case reads as follows: "[i]f a statement was unknown to the buyer at the time the sale was completed, it is

obvious that there can be neither consideration from the standpoint of the law of contracts nor detrimental reliance from the standpoint of the law of torts." *Id.* However, simply stated, *Foster* is not dispositive in favor of GM here. The fact that the *Foster* court was not dealing with a question involving today's statute is not the only reason this is true. First, the claim in *Foster* was one rooted in the law of sales, not torts. Second, *Foster* only emphasizes if the statement was *unknown* at the time of sale, not "unread." The dissent places emphasis on this as well, stating, "there can be no reliance on a statement the plaintiff knows nothing about." That the car had a driver's side air bag was indeed known to Forbes at the time of sale and was one upon which he relied in electing to use the product. *See*, Miss. Code Ann. § 11-1-63(a)(i)(4).

¶11.    Additionally, today's dissent relies on another federal case to bolster its argument that no express warranty existed upon which Forbes relied, *Austin v. Will-Burt Co.*, 232 F.Supp.2d 682, 687 (N.D. Miss. 2002), *aff'd*, 361 F.3d 862 (5th Cir. 2004). In that case, a telecasting company did fail to prove it relied on the manufacturer's statements when purchasing an aluminum telescoping mast, but it did not purchase that mast from the manufacturer, but rather a third party, the original purchaser, and did so ten years after the original sale. Because of this, the *Austin* court found no express warranty existed between the manufacturer and the plaintiffs in that case, thus *Austin* is distinguishable. In any case, *Austin* quoted *Albritton v. Coleman Co.*, 813 F.Supp. 450, 455 (S.D. Miss. 1992) to hold that, "[a]n express warranty is any affirmation of fact or promise which concerns the product and

11

becomes part of the basis for the purchase of such a product. Fault does not need to be shown to establish a breach. The plaintiff need only show that the product did not live up to its warranty." *Austin*, 232 F.Supp.2d at 687 (internal citations omitted). This accurately describes the situation before us today. An express warranty, which is *any* affirmation of fact, exists in today's case and undoubtedly became a part of the basis for Forbes's purchase of the car in the first place. Therefore, in order for Forbes to overcome a motion for a directed verdict, we must determine whether Forbes has shown that the product did not live up to its warranty.

¶12. In order to do this, we turn to the problem of deciding how hard an impact must be to meet the standard of "hard enough." The question of whether the warranty was breached depends on what amount of force is "hard enough" to trigger an air bag and whether the car sustained that amount of force. The dissenting opinion from the Court of Appeals opines that because the car had extensive amounts of damage, the collision must have been hard enough. *Forbes*, 2005 WL 2434404, *13-*14 (Irving, J., dissenting). To the extent that the evidence presented was sufficient to allow the issue to go to the jury, we agree. The plaintiffs' case relied in part on the testimony of Major John Tolar of the Columbia Police Dept. who stated that, in his opinion, it was unusual for an air bag not to inflate where damage to both cars was extensive, and Danny Alexander, the passenger of the other car in the accident, who testified to his injuries and damage to that car. Another expert at trial was Jim Pachmyer, the mechanic who removed and repaired the Delta 88. Pachmyer testified about the extent of the damage

12

and the nature and cost of the needed repairs, which was approximately $5,800. Pachmyer also testified that many of the items on the front of the car, designed to shatter on impact, were destroyed, including the grill assembly, header panel system, front cover, front bumper, front bumper impact absorber, and the whole front bumper assembly, with its various reinforcement bars and braces. The headlight assembly was also destroyed, and the hood and hood panel between the fenders had to be replaced. Additionally, Pachmyer testified that the metal radiator support, spanning the front of the car and on which the air bag collision sensors were mounted, was driven back four to six inches from the collision. The trial court concluded that this testimony was insufficient to show breach of duty much less proximate cause of the plaintiffs' injuries. The trial judge specifically cited the plaintiffs' failure to present a qualified expert to opine that the air bag system in the car was somehow deficient. However, today's case involves a breach of warranty claim, not a defective product claim.

¶13.　The Court of Appeals as well would have required an expert in the technical aspects of air bags to determine if the collision was "hard enough." *But see, e.g.*, **General Motors Corp. v. Pegues**, 738 So.2d 746, 751-53 (Miss. Ct. App. 1998) (trial court did not abuse discretion in allowing local mechanic to offer expert testimony for the plaintiff in products liability case as to the cause and nature of the accident). *See also* **Hollingsworth v. Bovaird Supply Co.,** 465 So.2d 311, 314 (Miss. 1985); **Ford Motor Co. v. Dees**, 223 So.2d 638, 641 (Miss. 1969); **Ford Motor Co. v. Cockrell**, 211 So.2d 833, 838 (Miss. 1968). In today's case, the dissenting opinion from the Court of Appeals made inquiry as to the existence of authority

13

which requires expert testimony in order to establish the degree of the impact in this case. *Forbes*, 2005 WL 2434404, *9 (Irving, J., dissenting). The majority of the Court of Appeals relied on a case from a federal district court in which the trial court dismissed a claim after finding no expert evidence that plaintiff's air bag failed to deploy because of some defect. *St. Clair v. General Motors Corp.*, 10 F.Supp. 523 (M.D. N.C. 1998). That court held that "plaintiffs must offer 'legal evidence tending to establish beyond a mere speculation or conjecture every essential element' of their claims." *Id.* at 532 (internal citations omitted). We distinguish *St. Clair* by pointing out that the claim in that case was negligent design and manufacture, unlike the claim in this case of a failure to conform to a factual representation upon which the claimant justifiably relied. It is true that we have frequently relied on expert testimony in deciding fault in products liability cases. *See Williams v. Bennett*, --- So. 2d ----, 2006 WL 146108 (Miss. 2006); *Daniels v. GNB, Inc.*, 629 So. 2d 595 (Miss. 1993); *Dunson v. S. A. Allen, Inc.*, 355 So. 2d 77 (Miss. 1978). However, in today's case, we are not to determine fault. No legal authority exists to require expert testimony in this case, and we do not want to encourage such a rule. An expert beyond what the Forbeses presented should also not be required to point out to the jury that Mr. Forbes thought he was buying a car with an air bag that would inflate in an accident such as this and that the collision was sufficiently hard to deploy the air bag consistent with his expectations. Both the trial court and the Court of Appeals explained that several GM engineers were present in the courtroom, and that the plaintiffs' attorney could have called these GM experts as adverse witnesses if he had wanted.

14

There is no doubt that providing more expert testimony in this case would not have been an insurmountable hurdle, but we certainly cannot fault the attorney for choosing not to call witnesses who were present, not to help his case, but instead to bolster the case of his opponent, who was employing them for that purpose. The jury should have been presented with the question of whether the impact was hard enough to have deployed the air bag and thus fulfilled a promise on which Mr. Forbes relied when buying his car.

¶14.    Here, Forbes "need only show that the product did not live up to its warranty." *Albritton*, 813 F.Supp. at 455. This means in part showing that the impact was hard enough, something Forbes may attempt to do without further expert testimony than that already offered. The dissenting opinion does not take issue with the conclusion that expert testimony is not needed to establish that the product did not perform as warranted. Forbes can do so without the need of expert testimony in this case because "[f]ault does not need to be shown to establish a breach." *Id.* We do not intend for today's holding to become a strict rule that no expert testimony is ever needed in any products liability case involving an automobile's air bag. The nature of these fact-driven actions is such that we must approach them on a case-by-case basis. We are also not determining fault, but simply deciding if the question should be presented to a jury, which we do viewing the evidence in the light most favorable to the Forbeses, and giving them the benefit of all favorable inferences that may be reasonably drawn from the evidence. *See* **Cousar**, 855 So. 2d at 998. For the sake of emphasis, we repeat that, in order for this case to proceed, the facts and evidence must only be such that

15

reasonable jurors could have arrived at a different verdict. We find that possibility to be very likely.

¶15. We cannot find that more was needed for the trial court to allow this case to proceed into GM's case-in-chief. GM provided the express warranty in the owner's manual included with the car it manufactured. That warranty issued by GM contained the ambiguous language "hard enough" as the impact threshold for an air bag to inflate. This case presents a classic jury question, whether the car in the collision here sustained a "hard enough" impact to deploy the air bag. Having provided testimony from at least one credible witness with regard to the impact of the collision, the Forbeses have at least presented sufficient evidence to create a jury issue. Had the trial court given the case to the jury, the jurors certainly would have more at their disposal to decide beyond speculation and conjecture the issue of whether the product failed to perform as warranted. The Forbeses established a prima facie case, and there were no proper grounds for the grant of a directed verdict. The dissent in the Court of Appeals presents a hypothetical situation not at issue, a 70 mile-per-hour headlong collision into a brick wall, to ask when expert testimony is not needed to establish that an air bag should have deployed. *Forbes v. Gen. Motors Corp.*, 2005 WL 2434404, *16 (Irving, J., dissenting). Naturally, only the jury presented with such a case can answer that question, but again this hypothetical goes to an analysis of a defective product claim, and not one of a breached express warranty, as here. In the latter situation, we would not hold that an expert be required for the jury to reach its decision. Likewise, we do not find today that an expert beyond those

16

who testified was required in this case for the jury to have been given the opportunity to make its decision. A directed verdict exists so a defendant may challenge a case unsupported by sufficient evidence. Miss. R. Civ. P. 50(a). The trial court improperly granted GM's motion for a directed verdict, as here the evidence was at least sufficient to require GM to go forward with their case-in-chief.

### B. Did the defective condition of the air bag render it unreasonably dangerous to the Forbeses?

¶16. The Forbeses claim that the air bag was in a defective condition for breaching its warranty by not deploying when the car was involved in a front-end collision. A "defective condition," required under the final two parts of the statutory claim, subsections (a)(ii) and (a)(iii), should be distinguished under the current statute from a "defective product," which would be required under the first part of the statutory claim, subsection (a)(i), had the Forbeses sued under subsections (a)(i)(1), (2), or (3). Miss. Code Ann. § 11-1-63(a). The "defective condition" considered by subsections (a)(ii) and (a)(iii) is merely the satisfaction of one of four possible elements under subsection (a)(i). An absence of the satisfaction of an element in the first section obviates further discussion under the following two sections. As discussed above, the Forbeses sued under subsection (a)(i)(4), which does not require that the product be defective, but simply requires a failure of the product to perform as warranted. We have found the Forbeses' claim to satisfy the fourth element of subsection (a)(i), to the extent that the jury should have been allowed to consider this issue, and thus we continue our analysis. Regardless of which subsection of (a)(i) a party sues under, the next two questions

17

ask if the product was (1) unreasonably dangerous and (2) the proximate cause of the damages because of its "defective condition," or the satisfaction of one of the (a)(i) elements, which here was the failure to perform as warranted. Because of that defect, or, stated differently, because of that "defective condition," the Forbeses argue the product was unreasonably dangerous to the driver, causing her to be thrown into the windshield. This Court has held that "plaintiffs have the burden of showing that the 'defect that allegedly was the proximate cause of their injury existed at the time that the product left the hands of the manufacturer, and that the defect rendered the product unreasonably dangerous. Accordingly, the proof must support that no material change in that product occurred after leaving the manufacturer's control.'" *3M Co. v. Johnson*, 895 So.2d 151, 165 (Miss. 2005) (quoting *Clark v. Brass Eagle, Inc.*, 866 So.2d 456, 461 (Miss. 2004)).

¶17. In their petition, the Forbeses draw our attention to the testimony of George Green, their expert witness who, despite admitting that he was not an expert on air bag design or the various factors or conditions of air bags, had extensive experience as an expert witness in cases involving questions which required engineering and mechanical knowledge and who had conducted research for his testimony in this case. Also, testimony in the record provides us with enough proof of Mrs. Forbes's injuries that the failure of the air bag to deflate could indeed be found unreasonably dangerous by a jury. During her time in treatment when she underwent intensive care, Mrs. Forbes experienced mental, speech, and physical rehabilitation, blood clots, surgery, and a coma. It is true that we have said, "[t]he mere fact

18

that the accident occurred and plaintiff was injured of itself alone constitutes no evidence of any negligence or breach of other duty by General Motors, and does not raise a presumption that it was due to any act of negligence or other breach of duty." *Creel v. General Motors Corp.*, 233 So. 2d 105, 109 (Miss. 1970). We have also decided products liability cases, citing lack of credible evidence as a factor when no expert examined the allegedly defective product. *Brass Eagle*, 866 So.2d at 462. However, in this case, much more than just proof of the accident has been laid before us, and we cannot today find, based on lack of evidence, that the Forbeses did not meet their burden on this issue to show any defective condition of the air bag.

### C. Did the allegedly defective and unreasonably dangerous condition proximately cause the damages?

¶18. Having now found that there was sufficient evidence in the record to withstand a motion for a directed verdict on the issues of whether the product failed to perform as warranted, which is a defective "condition" of the product, thus satisfying subsection (a)(i), and whether the defective condition made the product unreasonably dangerous, thus satisfying subsection (a)(ii), we next address the issue of whether the defective condition of the product was the proximate cause of the damages. Again, the Forbeses carry the burden of showing that the defective condition that allegedly proximately caused the injuries here, the faulty air bag, existed at the time the product left GM's hands. *3M Co. v. Johnson*, 895 So.2d at 165. The proximate cause is the "cause which in natural and continuous sequence unbroken by any

19

efficient intervening cause produces the injury and without which the result would not have occurred." ***Delahoussaye v. Mary Mahoney's, Inc.***, 783 So. 2d 666, 671 (Miss. 2001).

¶19. At trial, the Forbeses offered as their expert John Blunschi, a retired Louisiana police officer trained in accident reconstruction, or determining the cause of accidents. He testified that Mrs. Forbes would not have struck the windshield if the air bag had inflated. Because of Blunchi's familiarity with air bags, and because Mrs. Forbes sustained injuries that would not have occurred if the air bag had inflated, the Forbeses argued on appeal that it was evident the air bag's failure to deploy was the proximate cause of Mrs. Forbes's injuries. Again, we have held that proof of injury alone is insufficient, and that more is needed to satisfy the burden. ***Creel v. General Motors Corp.***, 233 So. 2d at 109. In this case, more than mere proof of injury was given through other expert testimony, including that of Blunschi, and the burden was satisfied. Regardless, it is not necessary, or even permitted, for us to determine liability now. We need only decide today if GM should have been required to go forward and present its case-in-chief. We find the answer to be yes.

¶20. Today, we are called on to decide whether the evidence presented by the Forbeses in this case is sufficient to submit the case to a jury – that, and nothing more. Giving the Forbeses the benefit of all favorable inferences which may reasonably be drawn from the evidence which we are to consider anew and in the light most favorable to the Forbeses, we cannot say the plaintiffs' burden was not met or that reasonable jurors could not have differed in this case. We know, because the Forbeses have shown us, that Mr. Forbes bought this car

20

partly because of the promise of a functional air bag, that the car was involved in a collision with extensive damage, that the air bag did not inflate, and that as a result, Mrs. Forbes suffered major injuries. In viewing the evidence in the light most favorable to the Forbeses, we find jurors could possibly differ on this question. Add to this favorable inferences one may draw from this evidence and we easily find that a jury question exists. The Forbeses may not have presented sufficient evidence to convince a jury of liability on the part of GM, but this is not the question before us. We need only decide if the evidence presented was of such quality and weight that fair-minded jurors in the exercise of impartial judgment might have reached different conclusions. We find this to be the situation today. The jury should have been given the opportunity to decide this question. With regard to Miss. Code Ann. § 11-1-63(a), we find this issue to have merit, and therefore we reverse and remand this case to the trial court.

## II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING PHOTOGRAPHS OF OTHER ACCIDENTS

¶21. Finally, the Forbeses argued on appeal to the Court of Appeals that the trial court erred in excluding from evidence photographs of other GM automobiles in accidents when the air bags did inflate. First, we note that on this issue, the Court of Appeals was not divided. The Court of Appeals' dissenting opinion addressed only the first issue before us today. Also, on this issue, the Forbeses did not contest the holding of the Court of Appeals in either their motion for rehearing or their petition to us for Certiorari. Nonetheless, because this case is being remanded based on our disposition of Issue I, we briefly discuss this issue.

21

¶22. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Yoste v. Wal-Mart Stores, Inc.*, 822 So. 2d 935, 936 (Miss. 2002). Evidence of prior accidents can be used to show only two things, the existence of a dangerous condition and the knowledge of such a condition. *Parmes v. Illinois Cent. Gulf R.R.*, 440 So. 2d 261, 265 (Miss. 1983) (relying on *Illinois Central Railroad Company v. Williams*, 242 Miss. 586, 605-06, 135 So. 2d 831, 839 (1961)). Only upon a showing of "substantial similarity of conditions," shall a trial court admit this evidence for these purposes. *Id.* "When evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (internal citations omitted). The *Johnson* court went on to state that even when a substantial similarity of circumstances is established, the trial court nonetheless has broad discretion to exclude such evidence. *Id.*

¶23. The Forbeses assert that the trial judge abused his discretion by not allowing photographs of a Chevrolet Impala and a Pontiac Grand Prix involved in front-end accidents when the air bags did deploy. Because testimony at trial showed that the damaged parts on those cars were the same damaged parts on the Forbeses' Delta 88, the Forbeses wanted the photographs admitted to prove that the collision their car sustained was "hard enough" to cause the air bag to be deployed. The evidence, in order to be admissible, must be "carefully qualified." *Sawyer v. Illinois Central Gulf Railroad Co.*, 606 So. 2d 1069, 1075 (Miss.

22

1992). We simply cannot find that the evidence of photographs in this case was carefully qualified. The Forbeses did not offer any testimony on speed or weather conditions of the accidents involving the Pontiac and Chevrolet, and both of those cars are a different make and model than the one involved this case. Additionally, neither car in the proffered photographs were involved in this type of rear-end accident. The Pontiac collided with another in its side, and the Chevrolet ran off the road and hit a clay bluff. The trial court and Court of Appeals were both correct in holding that the Forbeses did not meet their burden to show a substantial similarity in conditions existed between the accidents in the photographs and the one in which their car was involved. We cannot find that the facts and circumstances of these other accidents were closely similar to the facts and circumstances at issue here. This issue is without merit.

**CONCLUSION**

¶24. While we affirm the Court of Appeals on the issue of the exclusion of the photographs, our primary concern is whether the trial court erred in granting GM's motion for a directed verdict at the close of the plaintiffs' case-in-chief. The question for us is one of sufficiency of the evidence, and we do not find the evidence presented by the Forbeses in this case to be so insufficient as to merit the granting of a directed verdict. Considering the evidence anew, cast in the light most favorable to the Forbeses, we give them the benefit of all favorable inferences one may reasonably draw from the evidence. After doing so, we find the facts do not point "overwhelmingly" in favor of GM, as required by our holdings, but that reasonable

23

jurors could have indeed arrived at a contrary verdict based on the evidence presented. *See*

*Cousar*, 855 So.2d at 998. The trial judge erred in not presenting the jury with this issue.

Thus, on this issue, we reverse the rulings of both the trial court and the Court of Appeals, and

remand this case to the Circuit Court of Marion County for proceedings consistent with this

opinion.

¶25. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED TO THE CIRCUIT COURT OF MARION COUNTY.**

**WALLER, P.J., EASLEY, GRAVES AND RANDOLPH, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., AND COBB, P.J.**

**DICKINSON, JUSTICE, DISSENTING:**

¶26. In my view, the arguments urged against the majority decision are so clearly correct

that I am compelled to respectfully dissent. The majority brushes aside the statutory

requirement that, in order to pursue a *products liability* claim[1] for breach of express warranty,

the Forbeses must have actually relied on the express warranty. It is my strong view that this

case has been wrongly decided, and I respectfully dissent.

*Justifiable Reliance*

¶27. The Forbeses argue that because the owner's manual for their Delta 88 expressly

represented that the air bag would inflate during a frontal collision that was "hard enough,"

---

[1]The majority has apparently been misled by the fact that, in contract claims for breach of warranty, there is no requirement that the consumer rely on, or even know about, a warranty. Today's case, however, is not a breach of contract action but rather a products liability claim, controlled by statute.

GM breached an express warranty. They may be right, insofar as a claim for breach of contract is concerned. But for a cognizable products liability claim based upon breach of an express warranty, Mississippi Code Annotated Section 11-1-63(a)(i)(4) requires a finding that, "[t]he product breached an express warranty or failed to conform to other express factual representations upon which the claimant *justifiably relied in electing to use the product*." Miss. Code Ann. § 11-1-63(a)(i)(4) (Rev. 2002) (emphasis added). It is uncontested that the Forbeses never read their owner's manual. Clearly, they cannot now claim their decision to "use the product" was influenced in any way by the unread warranty. For the Forbeses to claim they relied on a warranty about which they didn't even know defies logic. The majority addresses this hole in the Forbeses' case by simply stating, "the fact that the Forbeses never read their owner's manual is not fatal to their case. It is still possible to rely on assertions therein without having actually read them." It may very well be possible to rely on assertions in an owner's manual if one knows the assertions are there. But the record contains no indication the Forbeses knew anything at all about the assertions in the owner's manual.

¶28.    The majority – seemingly irritated by the statutory requirement of reliance – complains that "it would be quite unusual for a consumer to read an owner's manual before buying a car. Even more unusual would be for a consumer to insist upon reading the manual before buying the automobile and requiring that an understanding of the manual be a condition precedent to purchasing the car." Accurate though this observation may be, it is no answer to a bad statute to say we will ignore it. Stated differently, we have no constitutional power or right

25

to refuse to enforce a perfectly valid and constitutional restriction placed by the Legislature on products liability litigation. The statute clearly requires reliance by the purchaser, and there can be no reliance on a statement about which the plaintiff knows nothing.

¶29. The majority contends that our decision in *Palmer v. Volkswagen of America, Inc.*, 904 So.2d 1077 (Miss. 2005), does not apply to this case. In *Palmer*, we held, "[t]he presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." *Id.* at 1084. Although *Palmer* involved a different products liability issue than the one before us today, the reasoning behind our statement in *Palmer* applies equally to express warranty claims. The gravamen of a breach of warranty claim in products liability litigation is that the plaintiff's harm must have resulted, at least in part, from the plaintiff's reliance on what the warranty states, and when a plaintiff specifically bases such a claim on statements in an unread owner's manual, "nothing in the manual can be said to have contributed to the accident or to damages in [the] case." *Id.* at 1086. *See also Foster v. Copiah County Co-op*, 148 So.2d 702, 707 (Miss. 1963) ("If a statement was unknown to the buyer at the time the sale was completed, it is obvious that there can be . . . [no] detrimental reliance . . . ."); *Austin v. Will-Burt Co.*, 232 F.Supp.2d 682, 687 (N.D. Miss. 2002), *aff'd*, 361 F.3d 862 (5th Cir. 2004) (plaintiffs failed to prove they relied on manufacturer's statements when purchasing the mast, so court granted summary judgment on express warranty claim).

¶30. The majority correctly acknowledges that statements made by the Mack Grubbs Motors' salesman and relied on by the Forbeses cannot ground any claims against GM. Despite its declarations to the contrary, though, the salesman's statements are the precise express assertions the majority uses to find the Forbeses satisfied the first element of their breach of warranty claim. The majority finds, "[t]he salesman was merely relaying a fact GM represented in their owner's manual, that the car he was buying had a working air bag," and this was the warranty relied upon by the Forbeses. This assertion by the majority is pure speculation. The record contains not one scrap of support for the proposition that anything said by the salesman was prompted by anything in the owner's manual. Indeed, the record does not even suggest the salesman ever read the owner's manual. In addition, even if the Forbeses relied on the salesman's statement that the Delta 88 had an air bag, the salesman's statement was far different from the statement in the manual on which the Forbeses rely for their breach of warranty claim. The Forbeses never read and were never told that the air bag would inflate in frontal crashes that were "hard enough." This statement was unknown to the Forbeses' until this litigation, and it certainly did not play any part in the Forbes's decision to use the product, as required by the statute. They cannot now claim they justifiably relied on this statement in the owner's manual which they never read *and* about which they were never told.

¶31. For the reasons stated, I respectfully dissent, and would affirm the decision of the Circuit Court of Marion County.

**SMITH, C.J., AND COBB, P.J., JOIN THIS OPINION**.